763 So.2d 40 (2000)
LAMSON PETROLEUM COMPANY
v.
HALLWOOD PETROLEUM, INC., et al.
No. 99-1937.
Court of Appeal of Louisiana, Third Circuit.
May 10, 2000.
Rehearing Denied June 28, 2000.
*41 Mark H. Tompkins, Lafayette, Counsel for Appellants Union Oil Company of California, Petrocorp, Inc., Duer Wagner & Co., States Inc., Agricultural Methane, L.P. and Colt Resources Corp.
John W. Grant, Lafayette, Counsel for Appellants Oran Guidry, Jr.
Robin D. McGuire, Arthur D. Mouton, Lafayette, Carl D. Rosenblum, Covert J. Geary, New Orleans, Counsel for Appellee Lamson Petroleum Corp.
Ewell E. Eagan, New Orleans, Counsel for Appellants Union Oil Company of California, and Petrocorp Inc.
(Court composed of Judge NED E. DOUCET, Jr., Chief Judge, SYLVIA R. COOKS, and OSWALD A. DECUIR, Judges).
DOUCET, Chief Judge.
This case concerns ownership of a .59 acre strip of roadbed located in the Scott Field area of Lafayette Parish, Louisiana. The Plaintiff, Lamson Petroleum Corporation (Lamson) sued Hallwood Petroleum, Inc. and others who claim ownership of the property or underlying minerals as landowners, mineral lessees, royalty owners or overriding royalty owners. The Plaintiff seeks recognition of its oil, gas and mineral leases on the .59 acre tract, recovery of 100% of the production attributable to that property and a report of all sums due to it from the sale of production attributable to the property.
In 1989, Hallwood completed the A.L. Boudreaux No. 1 Well in the Scott Field. The property at issue in this suit is located in the production unit and both Hallwood and Lamson Petroleum Corporation purport to hold oil mineral leases on the property. The Defendants leased from the successors in title to the nine tracts divided in the 1933 partition of the property of Oneil Guidry. Lamson leased from the successors in title to a portion of the property which was allegedly left undivided. The trial judge, in his written reasons for judgment, correctly outlined the chain of title and the essential issues of this case as follows:
The lessors of both Lamson and the defendants trace their titles to Oneil Guidry as "common author" within the *42 provision of C.C.P. 3653. Oneil Guidry and his wife, Josephine Foreman, owned land in Section 1, T10S, R3E, and Section 6, T10S, R4E, Lafayette Parish. Both died intestate, Josephine in 1918 and Oneil in 1933. By Judgment of Possession in their joint succession proceedings dated October 25, 1933, their nine children were recognized as owners of and placed in possession of the property belonging to the successions. A tract of land which had been described in the succession proceedings as containing 248 acres, more or less (or a portion of it only according to Lamson's allegations) was partitioned by the drawing of lots. The partitioned property was divided into nine lots by the survey of V.E. Smith dated October 28, 1933, six lots containing 34.76 arpents each and three lots containing 33.33 arpents each, totaling 308.56 arpents. The three 33 .33-arpent tracts were represented to constitute the 100-arpent tract described in the boundary agreement between Oneil Guidry and Severin Duhon in 1919. In the act of partition dated November 16, 1933, the heirs acknowledged that the nine lots were of equal value, each having a value of $1000. Lot 7, recited to contain 33.33 arpents was allotted to Cleopha Guidry.
The core issue in this litigation is the location of the North boundary of Lot 7 both as to its actual location on the ground and as it relates to the public road and to the township line separating T9S and T10S, R4E. The North boundary of Lot 7 recited in the partition is "public road" and the survey indicates "Public Road" as lying, immediately North of but not a part of Lot 7. Lamson contends that the location of the township line on the survey is incorrect; further, that a portion of the road was owned by the nine heirs in indivision and that because no portion of the road was included in Lot 7, the portion located South of the township line was not included in the partition and thereby remained in indivision.
The defendants assert that no part of the road lying North of Lot 7 was owned by Oneil Guidry and that the North boundary of Lot 7 was also the North boundary of the Oneil Guidry property. The parties agree that Oneil Guidry had not acquired any property North of the township line dividing T9S and T10S and that the North boundary of the Oneil Guidry property was the township line. However, the defendants contend that the road was located entirely North of the township line and, as stated above, the North boundary of Lot 7 was the North boundary of the Oneil Guidry property. Although not so indicated in the pleadings, the defendants further contend in argument that even if a portion of the road is South of the township line, that portion was a part of Lot 7 because the documents indicate that the heirs intended to partition all of the property owned in indivision. Lamson claims that a portion of the road was located South of the township line; further, that portion of the road was not partitioned; and further, that portion of the road is the .59 acres at issue.
The basis of Lamson's claim for 100% of the production attributable to it and its lessors is that the defendants are bad faith possessors under Civil Code Articles 487 and 488 and thereby not entitled to reimbursement of any of the expenses of production.
The trial court, after a trial on the merits, handed down judgment in favor of Lamson, agreeing that the original 1933 partition did not include the property at issue. Remaining as parties to the litigation at the time of trial were: Union Oil Company of California, PetroCorp Incorporated, CXY Energy, Inc., Duer Wagner & Company, States, Inc., Agricultural Methane, L.P., Colt Resources Corporation, James H. Echezabal, J.H. Echezabal, Inc., Michael Barnes, Gilbert Eppich, Linda Eppich, Raymond L. Noel, Bright Condos, James H. Dunbar, Jr., Ronald J. Guidry, Standard Mortgage Corporation, *43 Dusty James Guidry, Brandy Nicole Guidry, Daniel R. Muhs, Sunset Production Corporation, Future Realty, Inc., James C. Gresham, Jr., Mineral Investment Corporation, Adasair Copland, Oran Guidry, Jr., Harvey R. Guthrey, Constance B. Guthrey, Ellen Wagner, Lanscor Development Corporation, John D. Kirkland, Ernest Henry Groppe, Jr., Richard E. Agee and IDC Energy Corporation. Judgment was rendered against these parties. Also remaining as defendants were: James H. Echezabal, J.H. Echezabal, Inc., Michael Barnes, Gilbert Eppich, Linda Eppich, Raymond L. Noel, Bright Condos, James H. Dunbar, Jr., Ronald J. Guidry, Standard Mortgage Corporation, Dusty James Guidry, Brandy Nicole Guidry and Daniel R. Muhs, against whom default judgments were rendered.
The judgment recognized the Lamson leases, ordered that effective January 1, 1990, 100% of the oil, gas and other mineral production attributable to the interest of Lamson and its lessors is due and payable to them, that the Defendants render an accounting of that production and that the Defendants pay legal interest on all amounts due Lamson for past production accruing from the time each amount was received by Lamson, except insofar as the amounts were deposited into an escrow account established by the parties. Suspensive appeals were filed by the following Defendants: Union Oil Company of California, PetroCorp Inc., CXY Energy Inc., Duer Wagner & Co., States, Inc., Agricultural Methane, L.P., Colt Resources Corp., and M. Hampton Carver. Devolutive appeals were filed on behalf of Oran Guidry, Jr., Sunset Production Co. and IDC Energy Corp. These parties will be referred to as the Appellants.
We first note that the Appellants' brief makes no reference to the record herein. Rule 2-12.4 or the Uniform Rules-Courts of Appeal states that:
The argument on a specification or assignment of error in a brief shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error. The court may disregard the argument on that error in the event suitable reference to the record is not made.
Appellants' brief refers only to documents in its own Appendix. This is not suitable reference to the record. However, we will consider the Appellants' arguments in spite of this deficit. We must first, however, consider Lamson's motion to dismiss the appeal.

MOTION TO DISMISS
Lamson argues that, because the Appellants' rights rise out of mineral leases from non-appealing Defendants, the judgment against the Appellants is final and cannot be appealed. We find no merit in this argument. La.Code Civ.P. art. 3664 provides that: "The owner of a mineral right may assert, protect, and defend his right in the same manner as the ownership or possession of other immovable property, and without the concurrence, joinder, or consent of the owner of the land or mineral rights." Pursuant to this statute, we find that the Appellants' have not lost their right of appeal as a result of the failure of the lessor/owners to appeal.

INTERPRETATION OF THE 1933 GUIDRY PARTITION

1. Intent of the Parties.

The Appellants first argue that the trial court erred in failing to interpret the 1933 Guidry Partition according to the intent of the parties.
In determining the intent of the parties to a written agreement, the court must construe the disputed provision together with the rest of the contract, giving the entire document a practical, reasonable and fair construction. La. C.C. arts.2045-2052; Lambert v. Maryland Cas. Co., 418 So.2d 553 (La.1982); McDuffie[ v. Riverwood Intern. Corp., 27,292 (La.App. 2d Cir. 8/23/95), 660 So.2d 158].
When intent cannot be clearly ascertained from the face of the agreement, *44 the court may consider the written provisions in light of other pertinent evidence, including the nature of the contract, the circumstances surrounding its formation, the understanding of the parties as to what was intended, the conduct of the parties before and after the agreement was executed, prior dealings between the parties, if any, and the equities and regular business practices pertaining to contracts of a similar nature. La. C.C. arts.2053-2055; McDuffie, supra; Allen v. Burnett, 530 So.2d 1294 (La.App. 2d Cir.1988). See also Henry v. Ballard & Cordell Corp., [ 418 So.2d 1334 (La.1982)] and TR Drilling Co., Inc. v. Howard, 463 So.2d 923 (La. App. 2d Cir.1985).
Noel v. Discus Oil Corp., 30,561, p. 17 (La.App. 2 Cir. 5/13/98); 714 So.2d 105, 114.
With regard to the intent of the parties to the partition, the trial judge stated:
This court has no doubt that the parties intended to partition all of the land they owned in indivision; further, that they thought the partition instrument accomplished this; and they had no intention of remaining owners in indivision of a small strip of land underlying the public road. However, in order for those findings of fact to determine the outcome of this litigation, several obstacles would have to be overcome. The testimony and survey of defendants' expert witness, Charles C. Camp, recognizes that even if the court would accept his opinion as to the location of the township line, a part of the traveled portion of the road as it existed in 1933 was South of the township line. This means that in order to totally deny Lamson's claim, the court would be required to hold that Lot 7 included a part of the traveled portion of the road. Such a holding would be contrary to all the Louisiana jurisprudence addressing that issue, including [State v.] Tucker [, 247 La. 188, 170 So.2d 371 (La.1964) ] specifically. It is not necessary to discuss what the result would be if the partition had occurred after the effective date of R.S. 9:2971.
In addition to the jurisprudence being contrary to the defendants' "intention of the parties" argument, there are two other factors to consider. First, while the parties obviously intended to partition all of the property owned in indivision, they just as obviously did not know they owned a part of a public road. This means that it is reasonable to interpret intention of the parties as the intention to partition all the property they thought they owned in indivision. To illustrate by an exaggerated hypothetical, if, unknown to his heirs, Oneil Guidry owned 40 acres of land two miles away at the time of his death, certainly that property was not partitioned by the 1933 instrument. A better illustration is the fact that a five-arpent tract located immediately South of Lot 4 of the partition was "inadvertently omitted" from the partition and was sold by the heirs by conventional act of sale. Even accepting the contention that the heirs intended to partition all of the land they owned in indivision, it must be recognized that they were mistaken and actually continued to own the five-arpent tract in indivision. The same can be said about a part of the road.
Another response to defendants' intention of the parties argument is that it was also the intention of the parties that the road serve as the boundary. In the language of the Tucker case quoted earlier, in recognizing that "deeply embedded in our law is the principle that in such a sale the purchaser acquires only the land included within the designated boundaries* * *" said further that such a rule "effectuated the intent of the parties, who had definitely fixed the perimeter of the property by contract." Considering that language and acknowledging that the heirs intended to partition all the land they owned in indivision, the result shows at best from the *45 defendants' standpoint that the partition instrument reflected contradictory or conflicting intentions. Defendants argue very forcefully that intention of the parties in this case meant intention to partition all land owned in indivision. Those same words can just as logically mean, as reasoned in Tucker, that the intention of the parties was to have the road serve as the North boundary.
Concluding the discussion of intention of the parties, the argument considered most convincing is that the Oneil Guidry heirs intended to partition all of the land which they thought they owned in indivision but that they did not know that they owned a part of the road and consequently failed to include it in the partition. Accordingly, the portion of the road located South of the township line which adjoined Lot 7 remained in indivision.
Thus, the trial court found that the property at issue was not included in the 1933 partition. "The trial court's findings on the factual issue of intent are governed by the manifest error standard of review on appeal." Noel, 30,561, p. 17; 714 So.2d at 114. Therefore, the fact finder's conclusions are entitled to great deference. The reasons given show that the trial judge considered not only the written provisions of the contract but the surrounding circumstances, the understanding of the parties as to what was included and the law applicable to the issue. We find no error in his conclusion as to the intent of the parties.

2. Application of Warranty to the Partition.

The Appellants next argue that the trial court erred in failing to apply the partition's warranty provision so as to require that the partition include title to the portion of the property located under the public road. The partition contains the following language: "Appearers herein hereby declared that they warrant to each other full title to the property herein partitioned and that they warrant and guarantee to each other the various servitude roads and servitude drainage in perpetuity as shown and indicated by said plat of survey." The Appellants argue that the case law concerning warranty requires that the partition be interpreted to require that the partition include the roadbed in the property partitioned. The cases cited by the Appellants are not applicable to this case. In this case, the partition clearly states the boundaries of the property to be partitioned. Further, as the trial court stated, the parties to the partition could not have intended to partition what they did not know they owned. The warranty included in the partition extends only to the property partitioned therein. Accordingly, we find no basis exists to sustain this argument.

3. Public policy.

The Appellants next argue that the trial court's interpretation of the partition violates public policy because the property is taken out of commerce in that a relatively small piece of property is owned in indivision by an ever larger number of people, thereby making the property unsaleable. The proposition that it is against public policy to take property out of commerce has generally been used in connection with attempts in conveyances to prevent subsequent owners from alienating property. We can find no authority for the idea that it is against public policy for large numbers of people to own a single tract of land in indivision. The cases cited by the Appellants mention, in dicta only, some of the difficulties which can arise from such ownership. However, those cases do not purport to rule on that issue. Similar situations concerning the ownership of property arise in this state with relative frequency, and have never been found to be against public policy or to take the property out of commerce. We decline to do so now.

*46 4. Bounded by the Public Road.

The Appellants next argue that the trial court improperly interpreted "bounded by the public road" to mean bounded by the public road right of way. The trial court in its written reasons found as follows:
The above-quoted language [bounded by the public road] is a part of the description of Lot 7 allotted to Cleopha Guidry in the 1933 partition among the heirs of Oneil Guidry and Josephine Foreman. It is necessary to determine the meaning of those words.
Many factors enter into a discussion of the public road as a boundary. It is perhaps appropriate to begin by reciting the criteria to be considered in a judicial determination of boundary locations under Louisiana law (pretermitting for present purposes the modification created by Act 555 of 1956, R.S. § 9:2971, discussed later). Although the principles set forth in the following language may have had earlier origins, the 1920 Louisiana Supreme Court case of Meyer v. Comegys is clearly the most often cited:
* * *the legal guides for determining a question of boundary, or the location of a land line, in the order of their importance and value, are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. But the controlling consideration is the intention of the party or parties.[1]
Citing the legion cases employing the above language would serve no purpose. Suffice it to say, that language has not been overruled and to this day stands and is often employed by courts and surveyors as evidenced by the testimony in the present case. That a road is an artificial monument is not disputed and was specifically recognized in Meyer. It follows then that in this case, the recited North boundary of Lot 7 in the 1933 Guidry partition was an artificial monument, i.e., "Public Road."
If a parcel of land is described as bounded on the North by "Public Road," does that mean the South right-of-way line of the public road or might it mean another location? In this court's opinion, the common sense interpretation of that language is that the described property stops at the public road and does not include the road or any part of it. Such an interpretation has clearly been the usual and, as far as the court has been able to determine, the only interpretation of Louisiana courts through the years. Interestingly, this rule was perhaps most clearly and forcefully stated in a case in which the court was called upon to interpret a statute which modified that very rule. The statute is R.S. 9:2971 (Act 555 of 1956), and the case is State v. Tucker, 247 La. 188, 170 So.2d 371 (1964). The statute provides in part as follows:
It shall be conclusively presumed that any transfer, conveyance, surface lease, mineral lease, mortgage or any other contract or grant affecting land described as fronting on or bounded by a waterway, canal, highway, road, street, alley, railroad or other right of way, shall be held, deemed and construed to include all of grantor's interest in and under such waterway, canal, highway, road, street, alley, railroad, or other right of way, whatever that interest may be, in the absence of any express provision therein particularly excluding the same therefrom;* *
In addressing the constitutionality of another part of the act which gave it retroactive application in some situations, the court in Tucker set forth the law prior to the statute:
Important here, we think, is the circumstance that each of the deeds described the land conveyed by specific boundaries, one of which was the railroad *47 right of way. In Louisiana a sale of land by fixed boundaries is known as a sale Per aversionem. Deeply imbedded in our law is the principle that in such a sale the purchaser acquires only the land included within the designated boundaries. Prior to Act 555 of 1956, this ancient principle applied with equal force when the sale designated a railroad right of way as a boundary. Such a sale included no property underlying the right of way. The rule had a sound basis: It effectuated the intent of the parties, who had definitely fixed the perimeter of the property by contract. (Footnotes omitted, italics added).

The Tucker case held that the statute could have no application to conveyances prior to its effective date. Since the present case involves the description in a 1933 partition, R.S. 9:2971 does not apply and the language above from Tucker does apply. In addition to the cases cited in Tucker, many others have held that a description naming a road, canal, railroad, or other right of way as a boundary means that the parcel described stops at the right of way and does not include property underlying the right of way.[2] This court's research revealed no Louisiana cases holding otherwise. It goes without saying that under R.S. 9:2971, different results may obtain depending upon the wording of the property description.
Defendants' interpretation of State v. Tucker deserves mention. Defendants argue that based upon the Supreme Court decision in Garrett v. Pioneer Production Corporation, 390 So.2d 851 (La.1980), the holding in Tucker "may be subject to question" and states: "It would appear that R.S. 9:2971 could pass constitutional muster if same were simply interpreted creating a rebuttable presumption rather than a conclusive presumption" and "In that manner the Supreme Court could uphold the statutes constitutionality." .... Without expressing comment as to the wisdom of the Tucker decision, this court feels obligated to follow it and leave its overruling, if appropriate, to a higher court. By way of concluding the discussion of Tucker, it is noted that six years after the Garrett case, the Supreme Court denied writs in Dunbar v. Benoit, 494 So.2d 341 (La.App. 3rd Cir.1986), which cited and followed Tucker.

Although the Appellants now argue vigorously that "bounded by the public road" does not include the right of way, we find the trial judge's reasoning to the contrary convincing and adopt it, and the conclusion reached thereby, as our own.

DEDICATION OF THE PUBLIC ROAD
The Plaintiff's expert surveyor, Michael Mayeaux, opined that the unpartitioned area included the property lying between the section line which formed the northern boundary of the Guidry land and the line shown on the partition plat as being the northern boundary of the property which was actually included in the partition. The trial court originally rejected this view finding, based on the language of the partition that the southern boundary of the unpartitioned portion lay along the southern right of way of the road. However, in amended reasons for judgment, the trial court altered its finding, as follows:
In the original reasons for judgment, the court disagreed with Michael Mayeux's assumption that everything South of the township line and North of Lot 7 was the road. The court found that the Smith survey was in error in that the *48 road did not actually extend as far South as Lot 7 and that Smith had failed to properly locate the road. The court found that the location of the road was a physical fact on the ground and that Smith could not create a road by simply drawing a line on a survey. While that is not totally incorrect, the survey nevertheless shows a clear assent by the parties to the use of the land North of Lot 7 as a public road. On reconsideration, Mayeux's assumption was correct, not because the survey accurately represented the location of the traveled portion of the road but rather because it represented the assent of the owners in an implied dedication of a road at that location.
Therefore, he found that the northern line of Lot 7, as shown on the partition plat, constituted the southern boundary of the unpartitioned property.
The Appellants contest the trial court's finding that "what was a public road by tacit dedication prior to 1933 became a wider public road by implied dedication in 1933."
Appellants contend that this cannot be because there is no evidence of acceptance or public use of the road. However, we find that under the circumstances before us, acceptance by the state or parish is irrelevant. Regardless of whether the dedication was accepted or the road was characterized as a public road, that portion of the land north of the line of lot 7 as shown on the survey was excluded from the partition.
The Appellants further argue that the Guidry heirs could not have dedicated property for use as a public road which they did not know they owned. This question, too, we find to be ultimately irrelevant to the finding here. The trial court found, and based on the totality of the evidence, we agree, that the partitioned property lay south of the northern boundary of Lot 7 of the plat attached to and made part of the act of partition. The heirs did not partition the remaining portion. While the questions raised by the Appellants raise interesting legal issues, they ultimately have no effect on the location of the unpartitioned property.

LOCATION OF TOWNSHIP LINE
The Appellants further argue that the trial court erred in accepting Michael Mayeaux's testimony regarding the location of the township line. The court, in its written reasons for judgment, explained its reasons for accepting Mayeaux's opinion in this regard:
The North boundary of the tract leased by Lamson is the same township line as the North boundary of the lands acquired by Oneil Guidry in Section 6 from Severin Duhon, namely, the township line between T9S, R4E, and T10S, R4E. Where is that township line?
The township and section lines were created by the General Land Office of the United States (GLO) and its predecessor, the Bureau of Land Management (BLM). These offices contracted with deputy surveyors to survey the newly acquired Louisiana Territory. "An approved survey of the public lands does not merely ascertain boundaries, it creates them, and a township survey completed and approved creates the boundaries of the township and the sections therein." In determining the location of a township line, this Court's duty is to ascertain where the line was established by the government surveyor.
The court agrees with the procedure employed by plaintiff's expert, surveyor Michael Mayeux, in retracing the work of the government surveyors and accepts his conclusions as to the location of the township line as described in Ex. 1 and in several hours of testimony. Some of the factors which the court considers particularly noteworthy in Mayeux's work and which are discussed fully in his testimony are:
1) He considered the lines established by the official township surveys and resurveys of the four adjoining townships;

*49 2) He incorporated recent survey data from John E. Chance & Associates depicting all corners, fences, roads, or other monuments currently located in the field to determine where the original boundaries were being perpetuated;
3) He considered the work of Deputy Surveyor George K. Bradford, as the last official GLO surveyor to remonument the lines on the neighboring townships to the West, T9S, R3E, and T10S, R3E.
4) He reviewed Bradford's work in locating and remonumenting Deputy Surveyor John Kap's establishment of the common corner to T9S, R3E and R4E, and T10S, R4E, which is on the township line at issue.
Early in his work on behalf of Lamson, Mayeux recognized that his conclusion as to the location of the township line would be different from the township line depicted by Val Smith in his survey for the 1933 Guidry partition. The court is convinced that because Mayeux knew his conclusion would be controversial and very likely the subject of litigation, he was more thorough and more careful than he might otherwise have been. His work in locating the township line was very professional and the court accepts it.
The trial court's determination of the location of a boundary is factual and should not be reversed in the absence of manifest error. Barker v. Quality Builders, Inc., 503 So.2d 1170 (La.App. 3 Cir. 1987); Broussard v. Coleman, 479 So.2d 1016 (La.App. 3rd Cir.1985), writ denied, 481 So.2d 1354 (La.1986).
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences should not be disturbed on review. Where the trial court's findings are based upon determinations of the credibility of witnesses, the manifest error rule requires that the trial court be afforded great discretion. Rosell v. ESCO, 549 So.2d 840 (La.1989).
After reviewing the evidence adduced at trial, we find no error in the trial court's summary of Mayeaux's testimony. While the Appellants' expert felt that the township line was in a different location, the trial court's finding concerning the location of the township line is supported by the record. He has thoroughly documented his reasons for making this determination. Finding no manifest error, we may not overturn it on appeal.

RETROACTIVE LEASE DATE
The Appellants also contend that the trial judge erred in awarding Lamson the proceeds of production which occurred prior to the date of the recordation of its leases. The appellants argue that the public records doctrine entitles them to rely on the absence of recorded leases, and prevents Lamson from recovering from third parties amounts paid before the leases were recorded. Lamson responds to this argument by pointing out that, as is reflected in the record, it has been appointed agent for its lessors, to pursue this litigation on their behalf and as such is entitled to recover under the provisions of La.Civ.Code art. 488 which provides that:
Products derived from a thing as a result of diminution of its substance belong to the owner of that thing. When they are reclaimed by the owner, a possessor in good faith has the right to reimbursement of his expenses. A possessor in bad faith does not have this right.
The Appellants counter by arguing that insofar as Lamson has acquired the rights of the undivided owners to production prior to the date of recordation of its leases, its claims are limited by La.R.S. 30:10(A)(3) to a claim against the operator of the well. La.R.S. 30:10(A)(3) provides that:
If there is included in any unit created by the commissioner of conservation one or more unleased interests for which the party or parties entitled to market production therefrom have not made arrangements *50 to separately dispose of the share of such production attributable to such tract, and the unit operator proceeds with the sale of unit production, then the unit operator shall pay to such party or parties such tract's pro rata share of the proceeds of the sale of production within one hundred eighty days of such sale.
While La.R.S. 30:10 does provide a remedy for unleased property owners to recover their share of the proceeds of a well from the operator of that well, we find no authority for the proposition that it provides the exclusive remedy for unleased land owners. In Bonnett v. Mize, 556 So.2d 228 (La.App. 2 Cir.1990), writ denied, 559 So.2d 1360 (La.1990), the court considered a case where a good faith possessor of immovable property received money from a mineral lease of that property. The court found that because the conveyance of the property to the good faith possessors was invalid, the owner was entitled to a money judgment against the good faith possessor for mineral lease rental payments and royalties received.
While we agree that the Appellants herein have not been alleged to be the operator of the well, we find no error in the trial judge's decision to grant judgment against the Appellants as good faith possessors of the property at issue and in favor of Lamson, standing in the shoes of the owners.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. All costs of this appeal are to be paid by the Appellants.
AFFIRMED.
NOTES
[1] Meyer v. Comegys, 147 La. 851, 86 So. 307, 309 (1920).
[2] Where a description or plat indicates that the road abuts or adjoins the road, it means abutting the entire width of the right of way, not just the pavement or traveled surface. City of Alexandria v. Chicago, Rock Island & Pac. Railroad Co., 240 La. 1025, 126 So.2d 351, 352-53 (1961) (defining "abutting a street" to mean abutting the right of way and not the actual pavement); City of Shreveport v. Selber, 21 So.2d 738, 742 (La.App. 2d Cir. 1945).