823 So.2d 431 (2002)
LAMSON PETROLEUM CORPORATION
v.
HALLWOOD PETROLEUM INC., et al.
No. 02-138.
Court of Appeal of Louisiana, Third Circuit.
July 10, 2002.
Rehearing Denied August 21, 2002.
*432 Mark H. Tompkins, Lafayette, LA, for Defendants-Appellants, Union Oil Company of California, Petrocorp Inc., Triton Oil & Gas Corp., James H. Echezabal, J.H. Echezabal, Inc., Doug Ashy and Ena Claire Ashy.
Ewell E. Eagan, Jr., Gordon, Arata, McCollam, Duplantis & Eagan, New Orleans, LA, for Defendant-Appellant, Union Oil Company of California.
Jefferson J. Moss, Jr., Lafayette, LA, for Defendants-Appellants, Doug Ashy and Ena Claire Ashy.
Richard F. Price, Jr., Metairie, LA, for Defendants-Appellants, James H. Echezabal and J.H. Echezabal, Inc.
Robin D. McGuire, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., Lafayette, LA, for Plaintiff-Appellee and Cross-Appellant, Lamson Petroleum Corporation.
Carl D. Rosenblum, Covert J. Geary, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, for Plaintiff-Appellee and Cross-Appellant, Lamson Petroleum Corporation.
Arthur D. Mouton, Lafayette, LA, for Plaintiff-Appellee and Cross-Appellant, Lamson Petroleum Corporation.
Court composed of SYLVIA R. COOKS, JIMMIE C. PETERS and GLENN B. GREMILLION, Judges.
COOKS, Judge.
This case is one of a number of identically titled cases arising from ownership disputes relating to certain roadbeds in the Scott Field area of Lafayette Parish. This court previously handled numerous appeals regarding the trial court's judgments in these proceedings.[1] The basic disputes *433 in these cases center around Lamson Petroleum's acquisition in the mid-1990's of oil, gas and mineral leases located in the Scott Field area of Lafayette Parish, Louisiana. After acquiring oil, gas and mineral leases, Hallwood Petroleum began searching for oil in the Scott field in 1989, and was successful in many instances. Lamson researched the public records and found certain roadbeds in the area covered by Hallwood's leases may not have been owned by Hallwood's lessors. Lamson then secured leases from the people they believed to be the owners of the roadbeds. Lamson filed petitory actions against all those persons who Hallwood claimed owned and/or received the oil, gas and mineral royalties from the Scott Field production; and asserted its claim of ownership and/or the right to share in the proceeds of the production.
This particular case focuses on two transfers of land by Sophie Crow to her daughter (Henrietta Erwin) and son-in-law (William D. Beraud) in 1883. Both tracts of land forming the subjects of the transfers were described in the conveyance records as "bounded North by public road." Lamson contended by reciting the public road as the north boundary, Sophie Crow severed the strip from the property she conveyed and retained its ownership. The question before the trial court was whether the two conveyances extended to the northern limits of Sophie Crow's property, i.e., the section line, or whether it stopped at the south right-of-way line of the public road? If the conveyances were to the section line, Sophie Crow retained no part of the roadbed and Lamson's claim fails. If the conveyances stopped at the road right-of-way, Sophie Crow retained whatever ownership she had in the roadbed strip and it succeeded to her heirs.
The trial court, relying on the supreme court's opinion in State, Through Department of Highways v. Tucker, 247 La. 188, 170 So.2d 371 (1964), found the limits of the tracts stopped at the south right-of-way line of the public road; and, as a consequence, Sophie Crow retained ownership of the portion of the road located south of the section line. The trial court also found Lamson was entitled to legal interest on the amounts due it and its lessors for past production, dating from the time each amount was received by defendants.
The Hallwood defendants appealed the trial court's judgment, asserting the trial court erred in finding Sophie Crow retained the roadbed strip in the conveyances and in awarding interest from the date it received production proceeds rather than from the date of judgment. Lamson appealed the portion of the trial court's judgment finding defendants-appellants were good faith possessors after the filing of the lawsuit; and urges we reverse the award of expenses for production incurred after the filing of suit.

ANALYSIS

I. Interpretation of the Conveyances.
In its first assignment of error, defendants-appellants contend the trial court erred in applying Tucker, 170 So.2d 371 to the facts presented. They argue the trial court ignored the "true intent of the parties." Specifically, they argue there "is no discernable explanation or reason as to why Sophie T. Crow would have wanted to transfer the 70 and 74 arpent tracts less and excepting and retaining in herself ownership of a narrow strip of then worthless (though now valuable) land lying beneath the adjacent roadbed." The trial *434 court specifically addressed this argument, concluding as follows:
In the present case, the court finds no contradiction or inconsistency in the description in the instrument. The strongest argument supporting defendants' claim that the section line should be recognized as the North boundary of the two tracts is that it is illogical to think that Sophie Crow intended to retain a narrow strip under the road right of way, particularly in conveyances to her daughter and son-in-law. This issue has been discussed in several of the other cases in this series. In those cases the court agreed with defendants that the documents did not indicate an intention to exclude narrow roadway strips from the partition, or the will, or the sale, as the case may be. While acknowledging the validity of defendants' argument, the court found that the parties very probably did not know that the transferor owned a part of the road. It was the ruling of the court in those cases, as it is in the present case, that the court will not change a clearly-stated boundary description in order to reflect what the description might have been had the transferors known that the road was a servitude only and that they owned the fee title.
Contrary to appellants' argument, we find the trial court correctly determined the intent of the parties from the written words of the conveyances and rejected appellants' speculation as to what might have been in the minds of the parties. "The trial court's findings on the factual issue of intent are governed by the manifest error standard of review on appeal." Lamson, 763 So.2d 40, 45, quoting Noel v. Discus Oil Corp., 30,561, p. 17 (La.App. 2 Cir. 5/13/98), 714 So.2d 105, 114. The trial court correctly applied the law, as set out in its reasons for judgment:
Many factors enter into a discussion of a boundary recited to be a public road in a property description. It is appropriate to begin by noting the principal criteria to be considered in a judicial determination of boundary locations. Although the principles set forth in the following language may have had earlier origins, the 1920 Louisiana Supreme Court case of Meyer v. Comegys [147 La. 851, 857, 86 So. 307, 309 (1920)] is the most-often cited: "* * * the legal guides for determining a question of boundary, or the location of a land line, in the order of their importance and value are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. But the controlling consideration is the intention of the parties."
It is not necessary to cite the many cases which have relied upon the above language. It is sufficient to recognize that it has not been overruled and to this day serves as the standard applied by the courts. That a road is an artificial monument is not disputed and was specifically recognized in Meyer. It follows then that the recited North boundary in the sale of the 74 arpent tract and in the sale of the 70 arpent tract was an artificial monument, i.e., a "public road."
If a parcel of land is described as bounded on the North by a "public road," does that mean that the boundary is the South right of way line of the road? With nothing in the description or elsewhere in the instrument indicating otherwise, the common sense interpretation of that language is, in this court's opinion, that the property stops at the road right of way and does not include any part of the road. Such an interpretation has been recognized as the general rule in Louisiana. Interestingly, this rule was perhaps most clearly and forcefully stated in a case in which *435 the court was called upon to interpret a statute which modified that very rule. The statute is R.S. 9:2971 (Act 555 of 1956) and the case is State v. Tucker [247 La. 188,] 170 So.2d 371 (1964). The statute provides in part:
It shall be conclusively presumed that any transfer, conveyance, surface lease, mineral lease, mortgage or any other contract or grant affecting land described as fronting on or bounded by a waterway, canal, highway, road, street, alley, railroad, or other right of way, shall be held, deemed and construed to include all of grantor's interest in and under such waterway, canal, highway, road, street, alley, railroad or other right of way, whatever that interest may be, in the absence of any express provision therein particularly excluding the same therefrom; * * *
In addressing the constitutionality of another part of the act which gave it retroactive application in some situations, the court in Tucker set forth the law which applies to transactions prior to the effective date of the statute:
Important here, we think, is the circumstance that each of the deeds described the land conveyed by specific boundaries, one of which was the railroad right of way. In Louisiana a sale of land by fixed boundaries is known as a sale per aversionem. Deeply imbedded in our law is the principle that in such a sale the purchaser acquires only the land included within the designated boundaries. Prior to Act 555 of 1956, this ancient principle applied with equal force when the sale designated a railroad right of way as a boundary. Such a sale included no property underlying the right of way. The rule had a sound basis: It effectuated the intent of the parties, who had definitely fixed the perimeter of the property by contract. (Footnotes omitted; italics added)
The Tucker case held that the statute could have no application to conveyances prior to its effective date, August 1, 1956. Since the two conveyances from Sophie Crow which are at issue in this case were in 1883, R.S. 9:2971 does not apply and the above language from Tucker is applicable. In addition to the cases cited in Tucker, many others have held that a description designating a road, canal, railroad or other right of way as a boundary means that the described parcel stops at the right of way and does not include property underlying the right of way.
Tucker held that a property description designating a road, canal, railroad or the right of way as a boundary means that the described land stops at the right of way and does not include property underlying the right of way. Tucker also recognized the rule that a description with a road as a boundary indicates an intention of the parties that the described property stop at the road. This determination is consistent with this court's previous rulings in Lamson, 814 So.2d 596; Lamson, 770 So.2d 786; Lamson, 763 So.2d 40. Therefore, we will not disturb the trial court's ruling on this issue.
Defendants-appellants' warranty and public policy arguments were also rejected by the trial court. The cases cited in support of the public policy argument by defendants-appellants are not so compelling as to move this court to deviate from the settled rules of interpretation respecting property descriptions used by the trial court. Defendants-appellants also ask this court to impose obligations of warranty beyond the limits of the property conveyed in the act of transfer. We note this court *436 has previously rejected the same warranty and public policy arguments advanced by defendants-appellants in this case. Lamson, 775 So.2d 713; Lamson, 763 So.2d 40.

II. Legal Interest.
The trial court found Lamson was entitled to legal interest as provided in La.Civ. Code art. 2924 on the amounts due it and its lessors for past production, dating from the time each amount was received by defendants for as long as defendants had possession or use of said amounts. In its second assignment of error, defendants-appellants attack this portion of the trial court's judgment, contending interest should only be awarded from the date of judgment.
La.Civ.Code art. 488 provides:
Products derived from a thing as a result of diminution of its substance belong to the owner of that thing. When they are reclaimed by the owner, a possessor in good faith has the right to reimbursement of his expenses. A possessor in bad faith does not have this right.
In Thomas B. Catchings & Associates v. City of Baton Rouge, 621 So.2d 768 (La. 1993), the Louisiana Supreme Court held that legal interest runs from the date that the monies are due the plaintiff. The present case is very similar to Wurzlow v. Placid Oil Co., 279 So.2d 749 (La.App. 1 Cir.), writ refused, 282 So.2d 140 (La. 1973). In Wurzlow, the plaintiffs asked that defendant be ordered to account for all monies and interest attributable to a 1/48th overriding royalty interest in certain oil, gas and mineral leases dating back to first production. The trial court agreed and the appellate court affirmed, stating:
Considering the jurisprudence and in particular the more thorough exposition of the legal principles contained in Pease v. Gatti, [205 La. 949, 18 So.2d 511 (1944) ], we believe that the trial judge properly awarded interest on all sums received by defendant for which an accounting was due to plaintiffs from the date of receipt.
Id. at 774.
Accordingly, we find no error in the trial court's decision to award legal interest from the date defendants-appellants received the oil and gas proceeds.

III. Lamson's Cross-Appeal.
Lamson filed a cross-appeal, asking this court to reverse that portion of the trial court's judgment finding the defendants-appellants were good faith possessors after the filing of the lawsuit, and thus, entitled to recover production expenses they incurred after the filing of this suit. They argue the trial court's ruling is in direct opposition to La.Civ.Code art. 487 and this court's ruling in Edmundson Bros. Partnership v. Montex Drilling Co., 98-1564 (La.App. 3 Cir. 5/5/99), 731 So.2d 1049. La.Civ.Code art. 487 provides:
For purposes of accession, a possessor is in good faith when he possesses by virtue of an act translative of ownership and does not know of any defects in his ownership. He ceases to be in good faith when these defects are made known to him or an action is instituted against him by the owner for the recovery of the thing.
Defendants-appellants direct our attention to the recent holding in Lamson Petroleum Corp. v. Hallwood Petroleum Inc., 01-1201, p. 5-6 (La.App. 3 Cir. 3/20/02), 814 So.2d 596, 599-600. In that case, we reasoned as follows:
In its only assignment of error, the appellee argues the trial court erred in finding the appellant to be a good faith possessor. We disagree.
La.Civ.Code art. 3481 states:

*437 Good faith is presumed. Neither error of fact nor error of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possesses.
The trial court found there was a genuine dispute as to the ownership of the roadbeds and the defendants' failure to acquiesce and give up possession as soon as suit was filed did not rise to the level of bad faith. Considering the record as a whole, and the lengthy litigation involving the ownership of the roadbeds at issue, as well as issues involving their locations and boundaries, we cannot say the trial court erred.
The appellee argues this court's ruling in Edmundson Bros. Partnership v. Montex Drilling Co., 98-1564; 731 So.2d 1049, mandates a finding of bad faith. We find, however, that Edmundson is clearly distinguishable from the instant case.
The Edmundson case involved a suit by lessors against mineral lessees for cancellation of the lease for failure to develop the property. The lessee had drilled only one well in ten years on the 1149 acre tract and it did not produce in paying quantities. The lessors put the lessees in default, under the terms of the lease, by making a demand in writing that the lessee take steps to develop the property. The lessees took no further steps toward fulfilling their obligation under the lease and the lessors filed suit. The court held the lessees were bad faith possessors from the time suit was filed under the provisions of La.Civ. Code art. 487.
The facts before us are far different since there was a bona fide dispute as to the ownership of the property at issue. The dispute was resolved only after lengthy litigation and the taking of much testimony regarding both the title ownership and the boundaries of the property. Accordingly, we find no error in the trial court's determination that the appellant was a good faith possessor. (Footnote omitted.)
Though we are mindful of our holding in Lamson, 814 So.2d 596, the plain language of article 487 provides that a possessor "ceases to be in good faith" when an action is instituted against it. There is no exception or qualification to this rule set out in the article. In Edmundson, we held a mineral lessee ceases to be in good faith under La.Civ.Code arts. 487 and 488 at the time of judicial demand and ceases to be entitled to recover the costs of production. We specifically noted, although the defendants-appellants were in good faith prior to judicial demand, they ceased to be in good faith after the filing of the petitory action. La.Civ.Code art. 488 provides that a possessor in bad faith does not have the right to reimbursement of expenses. Accordingly, defendants-appellants are not entitled to recover expenses they incurred after the filing of this suit. That portion of the judgment finding defendants-appellants in good faith after the filing of suit is reversed, and they are not entitled to expenses after that date.

DECREE
For the foregoing reasons, the judgment of the trial court finding defendants-appellants were good faith possessors after the filing of the lawsuit, and thus, entitled to recover production expenses they incurred after the filing of this suit is reversed. In all other respects the opinion is affirmed. Costs of this appeal are assessed against defendants-appellants.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Lamson Petroleum Corp. v. Hallwood Petroleum Inc., 01-1201 (La.App. 3 Cir. 3/20/02), 814 So.2d 596; Lamson Petroleum Corp. v. Hallwood Petroleum Inc., 99-01759 (La.App. 3 Cir. 10/11/00), 775 So.2d 713, writ denied, 00-3562 (La.2/16/01), 786 So.2d 105; Lamson Petroleum Corp. v. Hallwood Petroleum Inc., 99-01656 (La.App. 3 Cir. 10/11/00), 775 So.2d 713, writ denied, 00-3558 (La.2/16/01), 786 So.2d 104; Lamson Petroleum Corp. v. Hallwood Petroleum Inc., 99-1444 (La.App. 3 Cir. 5/24/00), 770 So.2d 786, writ denied, 00-2568 (La.11/27/00), 775 So.2d 448; Lamson Petroleum Corp. v. Hallwood Petroleum Inc., 99-1937 (La.App. 3 Cir. 5/10/00), 763 So.2d 40, writ denied, 00-2305 (La.11/27/00), 775 So.2d 446.