# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-845 consolidated with 11-669


**THEODORE S. CARMICHAEL, ET UX.**

**VERSUS**

**THE BASS PARTNERSHIP, ET AL.**



\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 84,484
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Shannon J. Gremillion, Judges.


**REVERSED AND REMANDED; WRIT DENIED.**

**Mark D. Sikes**
**Attorney at Law**
**P. O. Drawer 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**
**Counsel for Defendant/Appellee:**
**Wiilischild Oil & Gas Corp.**

**Nancy Scott Degan**
**Baker, Donelson, Bearman**
**201 St. Charles Ave., #3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**Counsel for Defendant/Appellee:**
**Samson Resources Co.**

**Roy Clifton Cheatwood**
**Baker, Donelson, Bearman**
**201 St. Charles Ave., #3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**Counsel for Defendant/Appellee:**
**Samson Resources Co.**

**James J. Davidson, III**
**Davidson, Meaux, et al**
**P. O. Drawer 2908**
**Lafayette, LA 70502**
**(337) 237-1660**
**Counsel for Plaintiffs/Appellees:**
**Theodore S. Carmichael**
**Judy Chiasson Carmichael**

**Michael Gonzales Durand**
**Onebane Law Firm**
**P. O. Box 3507**
**Lafayette, LA 70502-3507**
**(337) 237-2660**
**Counsel for Defendant/Appellee:**
**Nuevo Energy Co.**

**W. Gerald Gaudet**
**Voorhies & Labbe**
**P.O. Box 3527**
**Lafayette, LA 70502**
**(337) 232-9700**
**Counsel for Defendant/Appellee:**
**Harry H. Cullen, et al.**

**John Michael Veron**
**Bice, Palermo & Veron**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**Counsel for Plaintiffs/Appellees:**
**Theodore S. Carmichael**
**Judy Chiasson Carmichael**

**Guy Earl Wall**
**Wall, Bullington & Cook, LLC**
**540 Elmwood Park Blvd**
**Harahan, LA 70123**
**(504) 736-0347**
**Counsel for Defendant/Appellee:**
**Bass Brothers Enterprises, Inc.**
**BEPCO, L.P.**

**Virgil Russell Purvis, Jr.**
**Attorney at Law**
**P.O. Box 298**
**Jonesville, LA 71343**
**(318) 339-8526**
**Counsel for Plaintiffs/Appellees:**
**Theodore S. Carmichael**
**Judy Chiasson Carmichael**

**Gerald Francis Slattery, Jr.**
**Schully, Roberts, Slattery**
**1100 Poydras St., Ste 1800**
**New Orleans, LA 70163**
**(504) 585-7800**
**Counsel for Defendant/Appellee:**
**Continental Land & Fur Company**

**Alonzo P. Wilson**
**Bice, Palermo & Veron**
**P. O. Box 2125**
**Lake Charles, LA 70602**
**(337) 310-1600**
**Counsel for Plaintiffs/Appellees:**
**Theodore S. Carmichael**
**Judy Chiasson Carmichael**

**Phillip A. Wittmann**
**Stone, Pigman, Walther**
**546 Carondelet St.**
**New Orleans, LA 70130**
**(504) 581-3200**
**Counsel for Defendant/Appellant:**
**The Bass Partnership**
**BOPCO, L.P.**

**Paul Edward Bullington**
**Wall & Bullington**
**540 Elmwood Park Blvd.**
**New Orleans, LA 70123**
**(504) 736-0347**
**Counsel for Defendant/Appellee:**
**Bass Brothers Enterprises, Inc.**
**BEPCO, L.P.**

**George Arceneaux, III**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505**
**(337) 232-7424**
**Counsel for Defendants/Appellees:**
**Black Hawk Oil Company**
**1987-IV STEA Limited Partnership**
**1987--II STEA Limited Partnership**

**Daria B Diaz**
**Stone, Pigman, Walther**
**546 Carondelet St.**
**New Orleans, LA 70130**
**(504) 581-3200**
**Counsel for Defendant/Appellant:**
**The Bass Partnership**
**BOPCO, L.P.**

**David Lyman Browne**
**Attorney at Law**
**650 Poydras St., Suite 2150**
**New Orleans, LA 70130**
**(504) 648-0171**
**Counsel for Defendant/Appellee:**
**Torch Energy Services, Inc.**

**Mary McCrory Hamilton**
**Voorhies & Labbe**
**P. O. Box 3527**
**Lafayette, LA 70502**
**(337) 232-9700**
**Counsel for Defendant/Appellee:**
**Harry H. Cullen, et al.**

**Karen Daniel Ancelet**
**Onebane Law Firm, APC**
**P. O. Box 3507**
**Lafayette, LA 70502-3507**
**(337) 237-2660**
**Counsel for Defendant/Appellee:**
**Nuevo Energy Co.**

**J. Bradley Duhe**
**Ottinger, Hebert, LLC**
**P. O. Drawer 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**
**Counsel for Defendant/Appellee:**
**Wiilischild Oil & Gas Corp.**

**Jamie D. Rhymes**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505-2008**
**(318) 232-7424**
**Counsel for Defendants/Appellees:**
**1987-IV STEA Limited Partnership**
**1987--II STEA Limited Partnership**
**Black Hawk Oil Company**

**Jonathan Robert Cook**
**Wall & Bullington**
**540 Elmwood Park Blvd**
**New Orleans, LA 70123**
**(504) 736-0347**
**Counsel for Defendant/Appellee:**
**Bass Brothers Enterprises, Inc.**
**BEPCO, L.P.**

**David Stephen Landry**
**Schully, Roberts, Slattery**
**1100 Poydras St., #1800**
**New Orleans, LA 70163**
**(504) 585-7800**
**Counsel for Defendant/Appellee:**
**Continental Land & Fur Company**

**Christopher Joseph Piasecki**
**Davidson, Meaux, etc.**
**P. O. Dr. 2908**
**Lafayette, LA 70502-2908**
**(337) 237-1660**
**Counsel for Plaintiffs/Appellees:**
**Judy Chiasson Carmichael**
**Theodore S. Carmichael**

**Adam Bennett Zuckerman**
**Baker Donelson Bearman**
**201 St. Charles Ave., Ste 3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**Counsel for Defendant/Appellee:**
**Samson Resources Co.**

**Hoai T. Hoang**
**Voorhies & Labbe**
**P. O. Box 3527**
**Lafayette, LA 70502**
**(337) 232-9700**
**Counsel for Defendant/Appellee:**
**Harry H. Cullen, et al.**

**Ryan M. Seidemann**
**Attorney General's Office**
**P. O. Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6085**
**Counsel for Defendant/Appellee:**
**State of Louisiana, AttorneyGeneral's Office**

**Penny L. Malbrew**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505-2008**
**(337) 232-7424**
**Counsel for Defendants/Appellees:**
**Black Hawk Oil Company**
**1987--II STEA Limited Partnership**
**1987-IV STEA Limited Partnership**

**Colleen Carr Jarrott**
**Schully Roberts Slattery**
**1100 Poydras, Suite 1800**
**New Orleans, LA 70163**
**(504) 585-7800**
**Counsel for Defendant/Appellee:**
**Continental Land & Fur Company**

**Nicholas J. Wehlen**
**Stone, Pigman, Walthier, et al**
**546 Carondelet St.**
**New Orleans, LA 70130**
**(504) 581-3200**
**Counsel for Defendant/Appellant:**
**BOPCO, L.P.**
**The Bass Partnership**

**Jackie M. McCreary**
**Stone, Pigman, Walther**
**546 Carondelet St.**
**New Orleans, LA 70130**
**(504) 581-3200**
**Counsel for Defendant/Appellant:**
**BOPCO, L.P.**
**The Bass Partnership**

**Megan K. Terrell**
**AAG, Civil Division**
**P. O. Box  94005**
**Baton Rouge, LA 70804**
**(225) 326-6085**
**Counsel for Defendant/Appellee:**
**State of Louisiana, AttorneyGeneral's Office**

**GREMILLION, Judge.**

This appeal involves complex oil and gas litigation associated with the remediation of a well site. This matter is consolidated with 11-669, a supervisory writ filed on behalf of Harry H. Cullen. The trial court granted summary judgment dismissing defendant-appellants, The Bass Partnership and BOPCO, LP's, third-party demand for defense and indemnity against Harry H. Cullen. The consolidated writ involves the trial court's denial of Cullen's summary judgment filed against Bass for reimbursement for all costs incurred as a result of having to defend the third-party demand. The issues presented in the main appeal and the supervisory writ involve the same contract (the Letter Agreement). For the following reasons, we reverse the summary judgment in favor of Cullen in the main demand and deny Cullen's supervisory writ.

## FACTUAL AND PROCDURAL BACKGROUND

In 2006, the plaintiffs, Theodore and Judy Carmichael, sued The Bass Partnership and BOPCO, LP (collectively Bass), among numerous others, claiming they breached a 1984 mineral lease and contaminated their property, known as the Hebert No.1 Well. Bass undertook restoration of the property to regulatory standards, and the plaintiffs' claims were settled. Before the settlement, Bass filed a third-party demand against Cullen to enforce a defense and indemnity obligation it alleges was incorporated in the February 10, 2000 assignment agreement in which the mineral lease and some property was assigned from Cullen to Bass.

Bass claims it is entitled to be reimbursed for its costs in defending the suit against plaintiffs and for the funds it paid in the settlement because Cullen was the lessee and owned an interest in the lease during the time the contamination occurred.

Following a hearing on Cullen's motion for summary judgment, the trial court found in his favor noting that Cullen's indemnity obligation was limited to

ownership or title obligations whereas Bass's obligation extended to location restoration. The trial court found that "had the parties intended that [Cullen] be responsible for location restoration or obligations arising out of operations on the property, they could have included that language in the contract." Thus, Bass's third-party demand against Cullen was dismissed. Bass now appeals and assigns as error:

1. The trial court erred in misinterpreting the assignment in granting Cullen's motion for summary judgment.

2. The trial court erred in limiting Cullen's indemnity obligation to title problems.

3. The trial court erred in failing to distinguish between location restoration and damages.

4. The trial court erred in ruling that liability could only be imposed by "operation" of the property.

5. Alternatively, the trial court erred by granting summary judgment because the assignment was ambiguous and the trial court decided disputed issues of material fact.

In January 2011, Cullen filed a motion for summary judgment on his cross-claim filed against Bass and sought reimbursement for all costs, including court costs and attorney fees, incurred as a result of having to defend the third-party demand filed by Bass. Bass filed numerous memoranda opposing Cullen's motion for summary judgment. Following an April 2011 hearing, the trial court denied Cullen's motion for summary judgment. It rendered written reasons encompassing the written reasons it set forth in a minute entry which stated that, "Generally, indemnity agreements do not cover and do not encompass indemnity for the cost of enforcing the indemnity agreement, and this particular agreement does not specifically say that it would cover costs and attorneys' fees for enforcing the indemnity agreement." Cullen, in his supervisory writ to this court, assigns as error:

1. The trial court's erroneous application of the incorrect principle of law to his claim against Bass.

2. The trial court erred in failing to employ the rules of contract interpretation to the letter agreement between himself and Bass.

3. The trial court erred in failing to consider unique equitable principles present in this case.

In light of our ruling below reversing summary judgment, we deny the writ. As a result of our reversal of summary judgment in favor of Cullen, Cullen is no longer dismissed as a party to the suit since there is no final judgment. Thus, there is no danger of irreparable injury to Cullen that would warrant granting his supervisory writ in the consolidated matter (11-669). See La.Civ. Code art. 2201; *Herlitz Const. Co., Inc. v. Hotel Investors of New Iberia, Inc.,* 396 So.2d 878 (La.1981*).* Cullen can appeal the trial court's ruling regarding its findings pertaining to the Letter Agreement once the matter has been tried.

## SUMMARY JUDGMENT

On appeal, summary judgments are reviewed de novo. *Magnon v. Collins,* 98-2822 (La. 7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966 (B) and (C). This means that judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admission on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tires, Inc.,* 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ*

3

*denied,* 97-2737 (La. 1/16/98), 706 So.2d 979. In deciding whether certain facts are material to an action, we look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966 (A)(2).

## DISCUSSION

In 2003, the Carmichaels acquired a tract of land in Acadia Parish consisting of approximately 368 acres. The Carmichaels acquired a 2/3's ownership interest in the minerals on and beneath the land. In their petition they complain that the land was damaged by the various defendants prior to their acquisition of it. In 1984, the previous owners (the Heberts) entered into a mineral lease with Cullen. In April 1985, Cullen executed an "Assignment of Interests and Oil, Gas, and Mineral Leases" assigning a portion of his interest in the mineral lease, including the Hebert No. 1 Well, to The Stone Petroleum Corporation (not a party in this appeal) and Bass Partnership. Over the 1980s and 1990s many assignments were made to various parties. In March 2000, Continental Land and Fur Company assigned a portion of its mineral interest to Bass partnership and in February 2010, Cullen assigned his mineral interest to Bass. At the time the Carmichaels filed suit, Bass Enterprises Production Company and/or BEPCO, LP were listed operators of the Hebert No. 1 Well.[1]

The Carmichaels alleged that the land surface and the ground "was contaminated, polluted, and impregnated with oils, grease, naturally occurring radioactive materials (NORMS), and other hazardous and dangerous chemicals, equipment, pipes, tanks, and related appurtances used and/or generated during the oil and gas exploration and production activities" that required remediation and restoration of the land. The Carmichaels further claimed contamination of the water and nuisance and trespass to their property. In addition to claims for breach

---

[1] We note that the Carmichaels did not sue Cullen. The claims against Cullen arise solely from Bass' third-party demand against Cullen seeking defense and indemnity.

4

of contract, the Carmichaels asserted a claim for restoration pursuant to the mineral code, for exemplary damages, for damages for trespass, and for attorneys fees. Various motions were filed over the years by multiple parties including multiple cross-claims for defense and indemnity against Bass and claims by Bass against various entities that it was owed indemnity.

In July 2010 Bass filed a "Motion for leave to file petition for declaratory judgment and third party demand and incorporated memorandum" against Cullen, urging that the Carmichaels claims fell within Cullen's obligations to Bass as set forth in the Letter Agreement and Assignment and Bill of Sale. A later supplemental and amended petition filed by Bass in August 2010 asserted claims against Cullen for indemnity, contribution, and reimbursement for any and all amounts it was required to pay.

In September 2010, Cullen filed an answer and asserted a cross-claim against Bass asserting his right to indemnity pursuant to the terms of the Letter Agreement. Other parties filed motions for summary judgment against Bass based on identical Letter Agreements they entered into with Bass. Cullen filed a motion for summary judgment against Bass in October 2010 based on the terms in the Letter Agreement. Similarly, in October 2010, Bass filed a motion for summary judgment against Cullen based on the terms in the Letter Agreement. Following a November 2010 hearing, the trial court granted summary judgment in favor of Cullen.[2]

## CONTRACT INTERPRETATION

A panel of this court recently summarized the pertinent law regarding contract interpretation in *CLK Co., L.L.C. v. CXY Energy, Inc.*, 07–834, pp. 8–10

---

[2] The trial court also granted summary judgment in favor of three other third-party defendants based on Letter Agreements using the same language as the one Bass entered into with Cullen. Although the other parties are not a party to the appeal, one of the third-party defendants, Continental Land and Fur, submitted a letter on its behalf on October 7, 2011, urging that, although they were not requesting consolidation of the cases, we consider the issues in the cases together. The letter notes that counsel conferred with Cullen, who did not oppose joint consideration, but that Bass did oppose joint consideration. We are sympathetic to this request. Joint consideration seems like the judicially efficient means to address what would become identical issues on appeal. Nevertheless, the only parties to this appeal are Cullen and Bass and we cannot consider Continental's claim for joint consideration.

(La.App. 3 Cir. 12/19/07), 972 So.2d 1280, 1286–87, *writs denied*, 08–0140, 08–0207 (La.3/14/05), 977 So.2d 932, 937 (citations omitted):

> Whether a contract is ambiguous is a question of law. Appellate review of a question of law simply requires the appellate court to determine whether the trial court's conclusion was correct.
>
> The goal of contract interpretation is to determine "the common intent of the parties." La.Civ.Code art. 2045. The intent of the parties to a contract must be determined in accordance with "the plain, ordinary, and popular sense of the language used in the agreement and by giving consideration on a practical basis to the instrument in its entirety." When the words of a contract are clear, explicit, and lead to no absurd consequences, the contract must be interpreted within its four corners and cannot be explained or contradicted by parol evidence. However, when a word in a contract is not clear, testimony or other evidence may be considered to determine the parties' intent and interpret the contract. . . . [This] rule applies to contacts involving immovable property.
>
> "The words of a contract must be given their generally prevailing meaning," and "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La.Civ.Code art. 2047. Additionally, "[w]ords susceptible of different meanings must be interpreted as having the meaning that conforms to the object of the contract." La.Civ.Code art. 2048. Pursuant to La.Civ.Code art. 2049, a "provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."

The January 18, 2000 letter agreement (Letter Agreement), which was drafted by Bass, states in part:

Gentlemen:

This is to verify our conversation of this date whereby Bass Enterprises Production Co. (hereinafter referred to as "Bass") and Harry H. Cullen (hereinafter referred to as "Cullen") have agreed that Cullen will forfeit its interest in the Hebert no. 1 Well and associated leasehold interest, as well as further leasehold interests obtained by Bass and Davis Petroleum Corp.in the above prospect, according to the following terms and conditions:

1. For Ten Dollars ($10.00 and other good and valuable consideration, the receipt of which is hereby acknowledged, Cullen agrees to convey to Bass all of its right, title and interests in and to the Hebert No. 1 Well, the MT 3 RF SUA and the other properties described in numerical paragraph five

6

(5) below and/or in Exhibit "A" hereto (hereinafter the "properties").  As to the Properties, **Bass hereby agres [sic] to assume Cullen's share of plugging liability and Cullen's share of the responsibility for location restoration.**  As the term is used in this agreement, **location restoration shall include but not be limited to removal and disposal of any and all materials or substances including naturally occurring radioactive material ("NORM") used in or produced in connection with operations relating to the Properties.**

2. The Effective Date of transfer will be 7:00 a.m. local time on February 1, 2000.

. . . .

7. Within fifteen (15) days after the execution hereof, Cullen will pay to Bass $22,171.00 and will deliver to Bass a mutually acceptable assignment and bill of sale of the Properties. **Payment of this sum shall relieve Cullen of any further payment obligations relating to costs and expenses incurred with regard to remediation** on the Properties.

8. Bass shall assume **all responsibility** for the Properties **as of the Effective Date**, and agrees and convenants to protect, defend, release, indemnify and save Cullen harmless **from and against any and all costs (including court costs and attorney fees), claims, demands, judgments, causes of action and other liability of whatsoever kind** arising out of or incident to the ownership, operation, plugging, abandoning and location restoration of the Properties **from and after the Effective Date**. In addition, Bass shall protect, defend, release, indemnify and save Cullen harmless from and against any an [sic] all costs (including court costs and attorneys fees), claims demands, judgements [sic], causes of action and other liability of whatsoever kind relating to the demands for release of leases referred to in paragraph four (4) above and to any additional such demands pertaining to the Properties and directed to the parties hereto.

9. Except as to the demands for release of leases referred to in paragraph four (4) above, Cullen agrees and convenants to **protect, defend, release, indemnify and save Bass harmless from and against any and all costs (including court costs and attorney fees), claims demands, judgments cause of action and liability of whatsoever kind** arising out of or incident to the **ownership of Cullen** of the Properties **prior to the Effective date**.

We find that the trial court's analysis is flawed.  The trial court stated in its

written reasons for judgment:

7

They point out that Bass' indemnity obligations specifically apply to "location restoration" as well as to claims "arising out of or incident to the ownership, operation, plugging, abandoning" of the property, whereas defendants' in cross-claim [Cullen and others] indemnity obligations are only for claims arising out of or incident to *the ownership* prior to the effective date. Had the parties intended that the defendants in cross-claim be responsible for location restoration or obligations arising out of the operation of the property, they could have included that language in the contract.

The Court finds that under the Letter Agreements, Bass is obligated to defend and indemnify the defendants in cross-claim for the claims in this lawsuit.

The trial court interpreted the lack of the words "operation, plugging, abandoning, and location restoration" following the word "ownership" in paragraph nine to mean that Cullen did not agree to indemnify Bass for those costs. However, pursuant to the Letter Agreement and Bill of Sale, Cullen was never in a position to conduct operations, plugging, or abandoning (since the lease was sold), or location restoration.

A plain reading of the remainder of the paragraph, that Cullen agrees to protect, defend, release, indemnify and save Bass harmless from and against "*other liability of whatsoever kind*" that arises "*prior to the effective date*" of the assignment can be construed as encompassing any claims arising out of any cause during the time period before the effective date of the agreement. We do not find that use of the term "ownership," without more, limits Cullen's responsibility to title problems. It cannot be discerned from the agreement; thus, granting summary judgment in Cullen's favor was inappropriate based solely on the Letter Agreement. We find the Letter Agreement is ambiguous, and that genuine issues of material fact exist regarding the parties intent.

When the intent of the parties is not clear from the four corners of the document, we look to parol evidence. In *Sloane v. Davis*, 619 So.2d 585, 590 (La.App. 3 Cir.), *writ denied*, 629 So.2d 355 (La.1993), we stated:

When it is impossible to gather the intention of the parties from a written contract, the court should permit introduction of extrinsic evidence. As a general rule parol evidence is admissible, as between the parties, to explain ambiguous terms of descriptive meaning found in contracts. The intention of the parties must be ascertained; and when that intention cannot be determined without an explanation of the situation and nature of the thing conveyed in the contract, courts are free to examine the parties' prior use of such terms or dealings on the same subject matter, the meaning generally afforded such terms when both are used in the same instrument, and other special facts peculiar to the oil and gas industry which may be helpful in arriving at the parties' true intent in so working the agreement.

In *CLK Company, L.L.C., v. CXY Energy, Inc.,* 07-834 (La.App. 3 Cir. 12/19/07), 972 So.2d 1280, we quoted *Blanchard v. Pan-OK Prod. Co., Inc.,* 32,764 (La.App. 2 Cir. 4/5/00), 755 So.2d 376, 381, *writ denied*, 00-1297 (La.6/23/00), 765 So.2d 1043 (citations omitted) in which the appellate court stated;

A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue or when the language used in the contract is uncertain or is fairly susceptible to more than one interpretation. These rules are applicable even to contracts involving rights in immovable property, such as mineral rights.

In considering the parol evidence in this record to determine the true intent of the parties in the form of affidavits and deposition testimony, we still find that a genuine issue of material fact exists. The deposition testimony submitted in support of the motions for summary judgment does little to assist us in determining the true intent of the parties. The record before us establishes that the complex issues surrounding the well, the parties' knowledge of what they were purchasing and/or selling and for what price/consideration are factually disputed. While the record is replete with contested facts related to some issues, it is devoid of facts relating to others. For example, there was no testimony about what damage occurred to the property in relation to the effective date of the Letter Agreement. There was no testimony regarding what the parties agreed to regarding

indemnification.  Given these genuine issues of material fact, the matter should not have been resolved summarily.

Accordingly, the trial court's grant of summary judgment in favor of Harry H. Cullen is reversed and we remand this case for further proceedings consistent with this opinion.  Cullen's supervisory writ is denied as there is no danger of irreparable harm.

**REVERSED AND REMANDED; WRIT DENIED**.