# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-855

**ROBERT WAYNE HACKETT, ET UX.**

**VERSUS**

**MURPHY EXPLORATION & PRODUCTION CO. - USA**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 95387
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and David Kent Savoie, Judges.

**Genovese, J., concurs in the result.**

**REVERSED AND REMANDED.**

**Jude Christopher Bursavich**
**Breazeale, Sachse & Wilson, L.L.P.**
**P. O. Box 3197**
**Baton Rouge, LA 70821-3197**
**Telephone: (225) 387-4000**
**COUNSEL FOR:**
    **Plaintiffs/Appellees - Robert Wayne Hackett and Kaye Breedlove Hackett**

**Andrew J. Halverson**
**Milling Benson Woodward**
**P. O. Box 51327**
**Lafayette, LA 70505-1327**
**Telephone: (337) 232-3929**
**COUNSEL FOR:**
   **Defendant/Appellant - Murphy Exploration & Production Co. – USA**

**THIBODEAUX, Chief Judge.**

In this dispute over the ownership of land beneath a public road right-of-way, Murphy Exploration & Production Company ("Murphy") appeals the grant of summary judgment declaring Robert Hackett and Kaye Breedlove Hackett owners of the disputed property. Murphy asserts that summary judgment is improper because the act of sale is ambiguous as to the parties' intent. We agree. For the following reasons, we reverse the judgment of the district court and remand the matter for further proceedings.

## I.

## <u>ISSUES</u>

We are entreated to decide:

1. whether the district court erred in granting the Hacketts summary judgment, when the act of sale contains alleged ambiguities as to the parties' intent to sell the property in dispute; and,

2. whether the district court's judgment is contradictory or unclear and, therefore, cannot be enforced as written.

## II.

## <u>FACTS AND PROCEDURAL HISTORY</u>

The property in dispute was first acquired by Elmer Stansel from H.B. White in 1911. White sold to Stansel 125 acres "being bounded on the East by Issac Lyons, and South and West by L. and H. Canal right-of-way, and North by an imaginary line parallel to the South boundary." At the time, the southern

boundary, described as the "Canal right-of-way," shown by the survey maps, was the southern section line for Section 37.

In 1921 Stansel entered into an exchange with Issac Lyons in which Stansel traded a triangle-shaped portion of his 125 acres acquired from White, lying in Section 36, for a triangle-shaped portion of Lyon's land lying in Section 37. Before this exchange, both Stansel and Lyons granted a right-of-way to Vermilion Parish for the construction of a public road. The right-of-way ran along the southernmost border of both properties, but was north of Section 37's southern section line. Therefore, after the exchange, Stansel's property encompassed the public road right-of-way.

Immediately following the exchange with Lyons, Stansel sold his property to Homer Woods. The act of sale described two tracts, the first being the remaining property Stansel acquired from White, approximately 96 acres, "more or less," and the second being the triangle acquired from Lyons in the exchange. It is from this document that the current dispute arises. Robert Hackett, plaintiff, has ultimately inherited any remaining property belonging to Stansel. Murphy, defendant, was granted an oil and gas leasehold interest for a unit that encompasses the property owned by Woods, now by Woods' heirs, to whom Murphy has paid royalties. The Hacketts initiated this suit to establish them as owners of the land lying beneath the public road right-of-way and to collect the royalties from Murphy that would be due to them as owners.

The Hacketts argue that the property beneath the public road was excluded from the Stansel-Woods Sale and, therefore, has been inherited by Robert Hackett. The Hacketts moved for partial summary judgment asking the court to recognize them as owners of the property. The motion also asked the court to

2

declare the disputed property as being within the MIOGYP Sand Units A & B, Reservoir A. The district court, relying largely on *Lamson Petroleum Co. v. Hallwood Petroleum, Inc.*, 99-1937 (La.App. 3 Cir. 5/10/00), 763 So.2d 40, *writ denied*, 00-2305 (La. 11/27/00), 775 So.2d 446, granted the partial summary judgment in favor of the Hacketts, declaring the Hacketts owners of the property in dispute. Murphy now appeals.

Murphy argues that subsequent decisions in the *Lamson* line of cases indicate that, where the entirety of a document transferring property evidences a conflict between the property description and the parties' intent, the intent of the parties should be further investigated. Murphy contends that the Stansel-Woods Sale document indicates the parties' intent to sell the property in dispute. Murphy posits that this conflict between intent and the description of the property sold prevents this dispute from being resolved by summary judgment. Furthermore, Murphy argues that the conduct of the parties following the sale supports the assertion that Stansel intended to sell the land burdened by the right-of-way. Therefore, a genuine issue of material fact exists as to whether the Hacketts are or are not the owners of the disputed property. Murphy also appeals the written judgment asserting it contains contradictory rulings and insists it cannot be enforced as written.

III.

**STANDARD OF REVIEW**

When an appellate court reviews the grant or denial of a motion for summary judgment, it applies the de novo standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is

3

appropriate." *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (quoting *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). The motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

"Material facts are those that determine the outcome of the legal dispute." *Carmichael v. Bass P'ship*, 11-845, p. 3 (La.App. 3 Cir. 2/1/12), 95 So.3d 1069, 1072. In order to determine whether facts are outcome-determinative, the court looks to applicable substantive law. *Id.*

IV.

## LAW AND DISCUSSION

For the Hacketts to be deemed owners of the disputed property, they must demonstrate that they acquired ownership in one of two ways: (1) from a previous owner or (2) by acquisitive prescription. La.Civ.Code art. 531. It is undisputed that Mr. Hackett has inherited any property that belonged to Stansel by inheriting from Stansel's children. The Hacketts must, therefore, prove that Stansel owned the disputed property at the time of his death. The dispute between the parties arises from a sale between Elmer Stansel and Homer Woods ("Stansel-Woods Sale"), in which Stansel sold to Woods two tracts of land in Vermilion Parish. The act of sale described the two tracts as follows:

> One certain tract of land lying and being situated
> in Vermilion Parish, Louisiana, on the West side of Rail
> Road right-of-way, containing Ninety-six (96) acres,
> more or less, lying in Section Thirty-seven (37),

4

Township Eleven (11), South Range Two (2) West, *bounded* on the Northwest by L. & H. Canal righ[t]-of-way*, on the Southwest by the Public Road,* and on the East by the Rail Road right-of-way. *Being the same property acquired from H.B. White*.

2nd: One certain tract of land situated in the Parish of Vermilion, Louisiana, containing Twenty-five and 54/100 acres, being in the Lyon Grant in Section Thirty-seven (37) Township Eleven (11), South of Range Two (2) West, commencing on "West side of Gueydan-Crowley High-way and running along the North line of Canal right-of-way 20.74 chains; thence North 44.30 West 27.00 chains; thence South along the West side of Road right-of-way to point of beginning, being Lot "B" of plat attached to an Act of Exchange between Vendor and Isaac H. Lyons, less a strip of land along the Southwest line sold for Public Road to Vermilion Parish *and also less a strip of land on the first tract hereinabove described sold for Public Road to Vermilion Parish*, containing Four and 84/100 (4.84) acres.

(Emphasis added).

The property in dispute is that described in the first paragraph above. The Hacketts argue that the phrase "bounded by" includes the land within and up to the public road boundary in the sale, but does not include the land under the public road. Under this analysis, Stansel retained ownership of the land subject to the Vermilion Parish road right-of-way. The Hacketts' interpretation of the "bounded by" phrase is supported by the Louisiana Supreme Court. The supreme court stated that a sale per aversionem, conducted prior to the enactment of Louisiana Revised Statutes 9:2971-9:2973 in 1956, did not include the property underlying a right-of-way, when that right-of-way was used to describe the boundary of the property being conveyed. *State Through Dep't of Highways v. Tucker*, 170 So.2d 371 (La.1964). "The rule had a sound basis: It effectuated the intent of the parties, who had definitely fixed the perimeter of the property by contract." *Id.* at 373. The Hacketts, therefore, argue that the "bounded by"

language in the description of the first tract of land, did not transfer Stansel's interests to the right-of-way, and Stansel remained the owner of the disputed property following the sale. Such an analysis would result in the Hacketts inheriting the disputed property.

According to Louisiana Civil Code Article 2046, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." However, the provisions of a contract must also be interpreted in light of each other "so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050.

The second tract sold to Woods describes the property Stansel acquired through the exchange with Lyons. Before the exchange, Lyons granted Vermilion Parish a right-of-way for the public road. In describing Tract Two in the Stansel-Woods Sale, the description defines the property then adds, "less a strip of land along the Southwest line sold for Public Road to Vermilion Parish *and also less a strip of land on the first tract* of herein above described sold for Public Road to Vermilion Parish, containing Four and 84/100 (4.84) acres." (Emphasis added). Louisiana courts have recognized that "less" a certain "right of way" language in a conveyance of property operates to acknowledge the existence of the servitude and remove it from the vendor's warranty, but is not the retention of ownership by the vendor. *Hendrick v. Texas & Pac. Ry. Co.*, 212 So.2d 745 (La.App. 2 Cir. 1968), see also *Rock Island, A. & L. R. Co. v. Guillory*, 17 So.2d 13 (La.1943). "The vendors under such a deed are stripped of all vestiges of ownership in the property conveyed, and such clauses are not ambiguous under the settled jurisprudence of this State." *Hendrick*, 212 So.2d at 747.

6

Therefore, when the entirety of the Stansel-Woods Sale contract is read together, the "bounded by" language in the description of Tract One conflicts with the "less a strip of land" language in the description of Tract Two. The first would only convey the property up until the public road, but not the land under it; the second would only remove the right-of-way from the vendor's warranty, but transfer ownership to the land under the public road. Although Louisiana courts have clearly determined the meaning of the phrase "bounded by" in property descriptions, this "common sense interpretation" is limited to instances in which "nothing in the description or elsewhere in the instrument indicat[es] otherwise."[1] *Lamson Petroleum Co. v. Hallwood Petroleum, Inc.*, 02-138 p. 4 (La.App. 3 Cir. 7/10/02), 823 So.2d 431, 434, *writ granted in part and remanded on other grounds*, 02-1338, 02-1681, 02-2419 (La. 10/25/02), 832 So.2d 975. The description of Tract Two specifically refers back to Tract One. It is also noted that the "less a strip" phrase was clearly an addition to the property description, originally in the Stansel-Lyons Exchange, made for the Stansel-Woods Sale. The "less a strip of land" language in Tract Two simply acknowledges the right-of-way on Tract One. If the property was not sold to Woods, the last sentence in the description of Tract Two would be unnecessary because Stansel would not need to discuss the servitude if the land beneath it was not being sold to Woods. Therefore, the two phrases conflict with one another.

In addition, the description of Tract One in the Stansel-Woods Sale has two contradictory phrases in itself. While the property is described as being bounded by the right-of-way as previously explained, the last sentence of the

---

[1]The transaction comprised one sale of two tracts of land. Indeed, the language of the document refers to "the property of which the following is a description, to-wit" and then goes on to describe the two tracts.

description states the property is "the same property acquired from H.B. White." When Stansel acquired property from White in 1911, there was no public road right-of-way, and the property extended to the Canal right-of-way, which from survey maps is the southern line of Section 37. If the land sold to Woods was the same as that acquired by Stansel from White, then the land beneath the public road was in fact sold to Woods. However, this interpretation would conflict with the pre-1956 meaning of the phrase "bounded by."

When read in its entirety, the Stansel-Woods Sale contract is ambiguous. The language used in the description of the two properties is susceptible to more than one conflicting interpretation. When provisions do conflict, and the parties' "intent cannot be clearly ascertained from the face of the agreement, the court may consider the written provisions in light of other pertinent evidence." *Lamson*, 763 So.2d at 43-44. Generally, summary judgment is not appropriate for claims based on intent, a subjective fact. *Phipps v. Schupp*, 09-2037 (La. 7/6/10), 45 So.3d 593. Although the supreme court "has acknowledged 'summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent,'" that is not the case here. *Id.* at 597 (quoting *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 28 (La. 7/5/94), 639 So.2d 730, 751). The conflicting phrases in the Stansel-Woods Sale raise genuine issues of material fact and require extrinsic evidence to be considered to determine the intent of the parties in that sale. It is a general rule that when the intent of the parties to a written contract "is not clear from the four corners of the document, we look to parol evidence." *Carmichael*, 95 So.3d at 1075.

In finding ambiguities within the Stansel-Woods Sale, extrinsic evidence needs to be considered. Based on the foregoing and because questions of

intent are generally not susceptible to determination by summary judgment, the grant of the Hacketts' motion for summary judgment was improper.

Because we reverse the district court's grant of summary judgment, we pretermit discussion of whether the district court's judgment is enforceable as written.

V.

## CONCLUSION

For the foregoing reasons, the grant of partial summary judgment is reversed and the matter is remanded for further proceedings. Costs of this appeal are assessed to the plaintiffs-appellants.

**REVERSED AND REMANDED.**