# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 16-707

**ROBERT WAYNE HACKETT, ET UX.**

**VERSUS**

**MURPHY EXPLORATION & PRODUCTION CO. USA**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 95387
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## SHANNON J. GREMILLION
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED AS AMENDED,
AND REMANDED.**

**A. J. Gray, III**
**The Gray Law Firm (APLC)**
**P. O. Box 1467**
**Lake Charles, LA 70602-1467**
**(337) 494-0694**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Robert Wayne Hackett**
  **Kaye Breedlove Hackett**

**Jude C. Bursavich**
**Robert L. Atkinson**
**Caroll Devillier**
**Breazeale, Sachse & Wilson, L.L.P.**
**P.O. Box 3197**
**Baton Rouge, LA 70821-3197**
**(225) 387-4000**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
  **Robert Wayne Hackett**
  **Kaye Breedlove Hackett**

**Thomas M. Flanagan**
**Andy Dupre**
**Anders F. Holmgren**
**Flanagan Partners LLP**
**201 St. Charles Ave., Suite 2405**
**New Orleans, LA 70170**
**(504) 569-0235**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Murphy Exploration & Production Co.USA**

**Robert L. Cabes**
**Andrew J. Halverson**
**Milling, Benson, Woodward, LLP**
**P. O. Box 51327**
**Lafayette, LA 70505-1327**
**(337) 232-3929**
**COUNSEL FOR DEFENDANT/APPELLANT:**
  **Murphy Exploration & Production Co. USA**

**GREMILLION, Judge.**

This dispute pits the defendant/appellant, Murphy Exploration & Production Company-USA, against the plaintiffs/appellees, Robert Wayne Hackett and Kaye Breedlove Hackett.[1] Murphy is appealing the $2,411,134.00 judgment granted in favor of the Hacketts. For the reasons that follow, we affirm as amended. However, we find that the trial court erred in its award of judicial interest, and remand the matter for the proper calculation of judicial interest.

### FACTS AND PROCEDURAL HISTORY

This dispute has appeared before this court before. In *Hackett v. Murphy Exploration & Prod. Co.-USA*, 14-855 (La.App. 3 Cir. 2/4/15), 158 So.3d 222, a panel of this court reversed a partial summary judgment in favor of the Hacketts that recognized them as owners of certain property subject to an order establishing a mineral production unit, finding that there was an ambiguity in the deed by which their ancestor in title allegedly acquired the property in question, which lies beneath a roadway over which the Parish of Vermilion has a right of way. The facts as found by that panel regarding the chain of title are important:

> The property in dispute was first acquired by Elmer Stansel from H.B. White in 1911. White sold to Stansel 125 acres "being bounded on the East by Isaac Lyons, and South and West by L. and H. Canal right-of-way, and North by an imaginary line parallel to the South boundary." At the time, the southern boundary, described as the "Canal right-of-way," shown by the survey maps, was the southern section line for Section 37.
>
> In 1921 Stansel entered into an exchange with Isaac Lyons in which Stansel traded a triangle-shaped portion of his 125 acres acquired from White, lying in Section 36, for a triangle-shaped portion of Lyon's land lying in Section 37. Before this exchange, both Stansel and Lyons granted a right-of-way to Vermilion Parish for the construction of a public road. The right-of-way ran along the

---

[1] Throughout this opinion, we will refer to "the Hacketts," even though the property involved in this matter constitutes Mr. Hackett's allegedly inherited, and, thus, separate property.

southernmost border of both properties, but was north of Section 37's southern section line. Therefore, after the exchange, Stansel's property encompassed the public road right-of-way.

Immediately following the exchange with Lyons, Stansel sold his property to Homer Woods. The act of sale described two tracts, the first being the remaining property Stansel acquired from White, approximately 96 acres, "more or less," and the second being the triangle acquired from Lyons in the exchange. It is from this document that the current dispute arises. Robert Hackett, plaintiff, has ultimately inherited any remaining property belonging to Stansel. Murphy, defendant, was granted an oil and gas leasehold interest for a unit that encompasses the property owned by Woods, now by Woods' heirs, to whom Murphy has paid royalties. The Hacketts initiated this suit to establish them as owners of the land lying beneath the public road right-of-way and to collect the royalties from Murphy that would be due to them as owners.

. . . .

The act of sale described the two tracts as follows:

> One certain tract of land lying and being situated in Vermilion Parish, Louisiana, on the West side of Rail Road right-of-way, containing Ninety-six (96) acres, more or less, lying in Section Thirty-seven (37), Township Eleven (11), South Range Two (2) West, *bounded* on the Northwest by L. & H. Canal righ[t]-of-way, *on the Southwest by the Public Road,* and on the East by the Rail Road right-of-way. *Being the same property acquired from H.B. White.*

> 2nd: One certain tract of land situated in the Parish of Vermilion, Louisiana, containing Twenty-five and 54/100 acres, being in the Lyon Grant in Section Thirty-seven (37) Township Eleven (11), South of Range Two (2) West, commencing on "West side of Gueydan–Crowley High-way and running along the North line of Canal right-of-way 20.74 chains; thence North 44.30 West 27.00 chains; thence South along the West side of Road right-of-way to point of beginning, being Lot "B" of plat attached to an Act of Exchange between Vendor and Isaac H. Lyons, less a strip of land along the Southwest line sold for Public Road to Vermilion Parish *and also less a strip of land on the first tract hereinabove described sold for Public Road to Vermilion Parish,* containing Four and 84/100 (4.84) acres.

(Emphasis added).

The property in dispute is that described in the first paragraph above.

*Hackett*, 158 So.3d at 223–25. The ambiguity that precluded summary judgment is found in the "bounded by" language in the first paragraph and the "and also less" language in the second. Before the 1956 enactment of La.R.S. 9:2791, land descriptions that were described as being bounded by waterways, canals, roads, and the like were held to not include the vendor's interest beneath those artificial boundaries. *See Lamson Petroleum Co. v. Hallwood Petroleum, Inc.*, 99-1937 (La.App. 3 Cir. 5/10/00), 763 So.2d 40, *writ denied*, 00-2305 (La. 11/27/00), 775 So.2d 446. Applying this principle to the matter would favor the Hacketts' claim, as the act of sale would thereby have not conveyed Stansel's interest in the property beneath the roadway. However, this conflicted with the language excluding the roadway strip, because, as the court noted, a long series of Louisiana cases held that such acknowledgements of servitudes operate to convey ownership in such property subject to servitudes. *Hackett*, 158 So.3d 222.

Before the previous appeal was decided by this court, Murphy filed a peremptory exception in the trial court, in which it argued that the heirs of Woods must be joined in the suit under La.Code Civ.P. art. 641. The Hacketts opposed this exception on the grounds that the trial court had been divested of jurisdiction over the issue of the ownership of the property because of Murphy's appeal of the partial summary judgment. They also argued that the exception was filed too late, because the trial court had already determined their ownership of the land. Lastly—and seemingly in contradiction of their second argument—the Hacketts argued that their action was solely for an accounting by the mineral producer. In December 2014, during the pendency of the previous appeal, the trial court

overruled the exception as premature. In June 2015, after the *Hackett* decision, the trial court again overruled the exception.

Murphy then filed a "Third Party Petition" naming Woods' heirs as defendants. This petition alleged that if Murphy owed the Hacketts the royalties in question, Woods' heirs owed the return of those royalties to Murphy. Six of the ten heirs were served with the petition, but none answered it. This petition was filed without leave of court.

Murphy then filed an exception of prescription in which it argued that the Hacketts' claims are subject to liberative prescription of ten years; thus, any claim they had to royalties before 2002, ten years before their suit was filed, are barred. The trial court maintained this exception.

The Hacketts and Murphy entered into joint stipulations for trial purposes:

1. That the Hacketts claim ownership in the road, not all of which was included in the production unit;

2. The road was situated within the unit and remained in production through May 31, 2014;

3. In 1921, the road was owned by Elmer Stansel;

4. Stansel sold certain property described above to Homer Woods on November 28, 1921;

5. The Hacketts "acquired title to whatever interest in the Road may have been retained" by Stansel through inheritance from Elvie Lee Stansel in 1991;

6. The Hacketts executed a royalty deed in 1992 conveying a 4% mineral royalty in the road;

7. In 2004, the Hacketts executed a deed conveying 50% of their interest in the road to Grand Anse Diversified Holdings, LLC. This was corrected in 2005 to reflect that the interest conveyed was solely the Hacketts' mineral interest;

8. In 2010, Grand Anse conveyed its interest back to the Hacketts;

9. On July 1, 1997, Murphy succeeded as operator of the unit wells;

10. At no time did Murphy pay any money to Grand Anse or the Hacketts.

Lastly, the parties stipulated to the amounts that might be owed the Hacketts under various scenarios, ranging between $1,660,480 and $3,209,633.

Following trial on the merits, the trial court ruled that the property belonged to the Hacketts and that the 2010 agreement between them and Grand Anse nullified their 2004 agreement. The trial court, in a judgment signed on March 8, 2016, awarded the Hacketts mineral royalties of $2,411,134[2] plus judicial interest from 2002 until paid.

Murphy and the Hacketts appeal the March 8, 2016, judgment, and the Hacketts appeal the grant of the exception of prescription. Murphy also has filed with this court an exception of no right of action in which it asserts that the Hacketts are not the proper obligees for any royalties that may be due for the period from 2004 through 2010.

## ASSIGNMENTS OF ERROR

Murphy assigns the following as errors:

---

[2]This sum represents the amount the parties stipulated as the Hacketts' damages if the 2010 Grand Anse agreement nullified the 2004 Hackett/ Grand Anse agreement.

A. The district court committed legal error in overruling Murphy's exception of non-joinder and in denying reconsideration of that ruling.

B. The district court manifestly erred in finding that Stansel retained ownership of the road in 1921.

C. The district court committed legal error in awarding Hackett 100% of the damages at issue because (1) he did not own 100% of the claims, and (2) the effect of a recorded instrument cannot be nullified retroactively as to third parties.

D. The district court committed legal error in imposing legal interest on the entire judgment beginning in 2002, before much of the alleged performance was even due.

The Hacketts assert that the following constitute errors of the trial court:

Assignment of Alleged Error No. 1:

The trial court committed manifest error in failing to rule that Murphy's continuing affirmative obligation as operator to determine the ownership of and to pay unleased interests their pro rata share of the proceeds from the sale of production precluded running of prescription.

Assignment of Alleged Error No. 2:

The trial court committed manifest error in failing to rule that the shameful actions of Murphy precluded the running of prescription based upon *contra non valentem*.

Assignment of Alleged Error No. 3:

Because the Hacketts asserted a classic real action for which there is no prescriptive period, the trial court erred in ruling that the Hacketts' claims were subject to prescription and limited to ten (10) years in arrears from the filing of the Petition on March 16, 2012.

## ANALYSIS

## I. NONJOINDER

Louisiana Code of Civil Procedure Article 641 provides:

A person shall be joined as a party in the action when either:

(1) In his absence complete relief cannot be accorded among those already parties.

(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:

(a) As a practical matter, impair or impede his ability to protect that interest.

(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

Murphy asserts that Woods' heirs must be joined in the matter pursuant to the language of Article 641. We agree. The judgment in this matter provided in pertinent part:

After considering all of the testimonial and documentary evidence presented during the trial of this matter on March 7 & 8, 2016, this court finds the plaintiffs have met [their] burden of proving that it is more likely so than not that:

1) Hackett owns the road bed that is the subject of this dispute, and 2) The December 8, 2010 agreement between Grand Anse and Hackett had the legal effect of nullifying the November 11, 2004 deed (as corrected) from Hackett to Grand Anse.

The Hacketts rightly counter that Murphy itself made Woods' heirs parties to the suit. This rendered the exception moot. Accordingly, this assignment of error lacks merit.

## II.   OWNERSHIP

Murphy's second assignment of error posits that the trial court erred in finding that Stansel retained ownership of the roadbed. This court has already held that the 1921 conveyance between Stansel and Woods was ambiguous. *Hackett*, 158 So.3d 222. Accordingly, the trial court was tasked with the unenviable exercise of determining the intent of the parties to a 1921 contract. The trial court was aided by the introduction of extrinsic evidence that included documents

7

whereby Stansel procured the property in question in 1911 and the judgment of possession whereby Woods' heirs succeeded to property in the area. The judgment of possession also provided that the property was bounded by the public road on the southwest. As explained by the Hacketts' expert, Mr. Leonard J. Chauvin, Jr., a civil engineer and land surveyor, and as instructed by the *Lamson* case, the roadway that sits atop the property was that described in the first paragraph of the description in the Stansel/Woods act of sale ("bounded . . . . on the Southwest by the Public Road . . . ."), would not have been conveyed in the sale. Accordingly, as paradoxical as it may seem, the land beneath the road was not conveyed by Stansel. This assignment of error lacks merit.

## III. APPLICATION OF THE PUBLIC RECORDS DOCTRINE AND MURPHY'S EXCEPTION OF NO RIGHT OF ACTION

Murphy's third assignment of error addresses the damages awarded the Hacketts. Specifically, Murphy asserts that the trial court erred in finding that the 2010 Grand Anse/Hackett agreement nullified the 2004 Grand Anse/Hackett agreement. Murphy argues that under the case of *Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, 10-2267, 10-2272, 10-2279, 10-2289 (La. 10/25/11), 79 So.3d 246, the rights asserted during the existence of the agreement between the Hacketts and Grand Anse are personal to Grand Anse and cannot be conveyed to the Hacketts except by assignment. We disagree.

In *Eagle Pipe*, the plaintiffs were landowners who acquired property and sued various defendants for contamination that occurred before they purchased the property. The court noted that the right to sue over property damages arises when the property was damaged, not when the damage was discovered. The right arose

8

in tort and was a personal right. It only existed as long as the landowner owns the property and is not conferred absent an assignment or subrogation from him.

In *Eagle Pipe*, the act of sale included the following, "[the sellers] do by these presents sell, transfer and deliver, with full guarantee of title and free from all encumbrances, and with full subrogation to all their rights and action of warranty against previous owners." *Id.* at 281. The court found that this language was "not an express assignment of personal rights to the new owner." *Id.* Rather, this language addressed warranty of title to the property. In this matter, the 2010 Grand Anse/Hackett agreement contains the following pertinent language:

> AN AGREEMENT of sale entered into this [8ᵗʰ] day of December, 2010, but effective as of November 11, 2004, made before me, Notary Public. . . .
>
> NOW THEREFORE, for good and adequate considerations, the receipt and adequacy while [sic] are hereby acknowledged, Grand Anse does hereby sell, assign, grant and deliver to Hackett all of its right, title and interest (50% undivided interest) in and to the minerals of the lands described as tracts 1, 2, 3 and 4 in Exhibit "A" of the sale dated November 11, 2004, recorded under Entry No. 20414573 of the records of Vermillion [sic] Parish.

The agreement then reiterated that it was effective as of November 11, 2004.

Murphy argues that giving retroactive effect to this provision is prohibited by *King v. Strohe*, 95-656 (La.App. 3 Cir. 5/8/96), 673 So.2d 1329. In *King*, the heirs of Mr. Strohe decided to effect an exchange under which two tracts would be created. One tract would belong to Mrs. King, Mr. Strohe's sister, and the other to his remaining heirs and his wife. All parties reserved their mineral rights. At some point later, minerals were discovered, and Mrs. King and the remaining Strohe heirs executed leases. In 1981, sixteen years after the exchange, prospectors obtained leases from the other Strohe heirs, but not from Mrs. King. Production

9

began in 1984, but the operator of the well treated Mrs. King as though her mineral servitude had prescribed.

In 1988, another group discovered that Mrs. King may have a valid interest in the property's minerals and convinced Mrs. King to execute a lease of her interests retroactive to 1984. They then commenced an action to account for and reimburse Mrs. King's interests under La.R.S. 30:10(A)(3). The unit operator argued that the statute did not apply because of the retroactive lease Mrs. King executed. Relying upon La.Civ.Code art. 1839[3] and La.R.S. 9:2721[4], the court of appeal refused to apply the 1988 lease retroactively to 1984.

The Hacketts counter that Murphy did not rely upon the 2004 sale, so it is not shielded by the public records doctrine. Louisiana Civil Code Article 3338 codifies the public records doctrine.[5] It states:

> The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
>
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.
>
> (2) The lease of an immovable.

---

[3]Louisiana Civil Code Article 1839 provides in pertinent part, "An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located."

[4]This statute was amended by 2005 La.Acts No. 169. Before its repeal, Subsection (A) provided:

> No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease, or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated. Neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.

[5] Louisiana Civil Code Article 3338 was enacted by 2005 La.Acts No. 169, §1, and became effective July 1, 2006.

(3) An option or right of first refusal, or a contract to buy, sell, or lease an immovable or to establish a real right in or over an immovable.

(4) An instrument that modifies, terminates, or transfers the rights created or evidenced by the instruments described in Subparagraphs (1) through (3) of this Article.

The public records doctrine holds that a third party may rely upon "the absence from the public records of those interests that are required to be recorded." *Cimarex Energy Co. v. Mauboules*, 09-1170, p. 20 (La. 4/9/10), 40 So.3d 931, 944.

We find the public records doctrine inapplicable to this proceeding. In 1997, when Murphy took over as operator of the unit, the 2004 sale from the Hacketts to Grand Anse had not been confected. The Hacketts did not assert their claims against Murphy until they filed suit in 2012, after the 2010 contract abrogated or nullified the 2004 contract. Under the public records doctrine, as already stated, a party is only entitled to rely upon the *absence* of something reflecting an interest in a piece of property. Here, there was no absence of such a document from the public records. The 2004 agreement was duly recorded. The 2010 document, in our minds, effectively restored the Hacketts' claim to the mineral rights by assignment. That assignment was a new and additional document, but it was not the first and only document. This assignment of error has no merit.

Grand Anse and the Hacketts confected a valid sale of the mineral interests in the property in 2010, retroactive to 2004. Murphy relies upon *Eagle Pipe* for the proposition that the Hacketts have no right of action to recover royalties during the 2004-10 period. We find that Murphy is applying an overly-expansive interpretation of *Eagle Pipe*. The contractual language in the 2010 Grand

11

Anse/Hackett contract operated to effectively assign Grand Anse's rights against Murphy. This exception is overruled.

## IV.   LEGAL INTEREST

Murphy also complains that the trial court erred in awarding legal interest from 2002. Awards of legal interest are governed by La.Code Civ.P. art. 1921, which provides that the trial court shall award interest as prayed for or as provided for by law. Under Louisiana Civil Code article 2000, damages for delay in performance on a sum due is measured by interest on that sum from when it is due. While the parties stipulated to the amount of damages the Hacketts would be owed under various scenarios, those sums represented the total amount of damages owed over time and depended on whether the Hacketts were owed royalties beginning in 1997 or in 2002. Regardless of when Murphy's obligation to the Hacketts began, though, it was not obligated for the entire amount of the judgment, but for their share of the production sales within 180 days of those sales. La.R.S. 30:10(A)(3). Accordingly, we remand the matter to the trial court for proper calculation of judicial interest on the award, with interest determined based upon the amount of each production sale and beginning 180 days from the date of each sale until paid, beginning in 2002.

## V.   PRESCRIPTION

The Hacketts' three assignments of error all complain of the trial court's grant of Murphy's exception of prescription. They first argue that Murphy had an ongoing obligation to ascertain ownership of the minerals, and that Murphy's failure to fulfill this obligation precluded the running of prescription. The law has settled on the proposition that an unleased landowner's cause of action for

12

accounting for production is quasi-contractual and governed by liberative prescription of ten years. *Taylor v. David New Operating Co., Inc.*, 619 So.2d 1251 (La.App. 3 Cir.), *writ denied*, 625 So.2d 1046 (1993); *Taylor v. Smith*, 619 So.2d 881 (La.App. 3 Cir.), *writ denied,* 625 So.2d 1038 (1993); *Taylor v. Woodpecker Corp.*, 93-781 (La.App. 1 Cir. 3/11/94), 633 So.2d 1308.

The Hacketts also maintain that Murphy's actions warrant the court applying the doctrine of *contra non valentem.* The doctrine establishes that prescription does not run against a plaintiff under four situations:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action. . . . Modern jurisprudence also recognizes a fourth type of situation where Contra non valentem applies so that prescription does not run: Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Corsey v. State, through Dep't of Corr.*, 375 So.2d 1319, 1321-22 (La.1979)(Footnotes omitted).

The Hacketts argue that the actions of Murphy, its predecessor as operator of the unit, and their counsel warrant application of *contra non valentem.* Specifically, the Hacketts contend that Great River, through its attorney, and Murphy, through the same attorney, concealed the Hacketts' interest in the property despite possessing title opinions from two lawyers opining that they were owners of the property.

Thus, the Hacketts argue that Murphy acted effectually to prevent them from availing themselves of their cause of action. We disagree. If failure to recognize

13

the legitimacy of another litigant's claim suspended the tolling of prescription, no claim brought before the courts would be susceptible of prescription. Courts exist to peacefully resolve disputes between parties who refuse to recognize the legitimacy of their opponents' positions. *See Nixon v. Fitzgerald*, 457 U.S. 731, 102 S. Ct. 2690 (1982).

In the present matter, Mr. Hackett opened the succession of his grandparents, through whom he became the owner of the property in question. In 1992, he was advised that he was probably the owner of the property. In fact, he executed a lease of his mineral interests in the property to Mr. John P. Newman on January 23, 1992. A reasonable person must ask himself why a third party would give payment to lease property from someone who did not own it. Further, the Hacketts later retained an attorney to whom they assigned a royalty interest in the property in exchange for investigating his interest in the property. Murphy played no part in that attorney's opinion that the Hacketts enjoyed little chance of prevailing in a claim to the property.

The Hacketts also contend that their claim is imprescriptible because they are asserting a real right. This ignores that the only real right the Hacketts are asserting is their claim of ownership of the land. That claim, it is true, does not prescribe. The right to recover under La.R.S. 30:10 prescribes in ten years, as noted above. These assignments of error lack merit. The trial court correctly held that any demands the Hacketts enjoyed under La.R.S. 30:10 were subject to ten years liberative prescription.

## CONCLUSION

Murphy, in adding the Woods heirs as third-party defendants to the action, rendered its exception of nonjoinder moot. The trial court correctly determined

14

that the Hacketts own the property beneath the Vermilion Parish road. The trial court correctly determined that the Hacketts' demands for proceeds from the sale of the minerals beneath the road was subject to ten years liberative prescription. The doctrine of *contra non valentem* is not applicable to the Hacketts' claims. However, the trial court did err in awarding judicial interest from 2002, and we remand the matter for calculation of legal interest from 180 days from the date of each production sale until paid. All costs of this appeal are taxed to defendant/appellant, Murphy Exploration & Production Company-USA.

**AFFIRMED AS AMENDED.**